United States District Court

Eastern District of Kentucky

at London

Civil Action No. 6:16-CV-278-DLB

Shane Purvis                                                    Petitioner

v.

Don Bottom, Warden                                    Respondent

Memorandum In Support of Petition of
Writ of Habeas Corpus of
Prisoner in State Custody

In the Laurel Circuit Court, Indictments 11-CR-00010 and 11-CR-00049, the Petitioner Shane Purvis Never wanted to go to trial and was adamant that he did Not want to plead guilty to any crime that carried a sentence with 85% parole eligibility, despite his trial Counsel's efforts to get him to plead guilty. VR 1/20/12; 1:34:39, T3;55-56. Trial Counsel Represented Petitioner for several months and spoke often with him about **Plea Bargains.** VR 1/20/12; 1:30:

1 of 18

36, 1:32:57. Throughout their meetings, trial counsel attempted to get Petitioner to plead guilty. T3; 55-56. Trial Counsel's efforts to pressure Petitioner into testifying included meeting with Petitioner and one of her colleagues and conducting a mock cross-examination with the Petitioner despite the fact that Petitioner Purvis had no intention of testifying. VR 1/20/12; 1:33:35, T3; 55-56. Trial Counsel recruited Petitioner's Father to convince him to enter a guilty plea. T3, 56. Trial Counsel even cried and pleaded with Petitioner to plead guilty. Id. The day before his scheduled trial, Petitioner told the circuit court that he did not want to "enter a guilty plea and that he was unhappy with his court appointed counsel." T3; 2, 3. Petitioner Purvis told the court that he and his counsel lacked communication and that she hadn't (investigated) talked to witnesses that he had told her about and that his trial attorney was not sure that they would be ready to go to trial. Id. at 2. Trial Counsel disagreed, and told the court that despite NOT having reached the witnesses whose names Petitioner had given her, she was prepared to go to trial. Id. at 2-3. The Circuit Court declined to appoint new counsel for Petitioner, Shane Purvis. Id. at 3.

After learning the Court would not appoint new counsel,

and on the same day as the mock cross-examination, Petitioner Purvis went before the court that same day and changed his plea. T3; 3. Petitioner pleaded guilty to one count of First-Degree Robbery in Laurel Circuit Court No. 11-CR-00010 for robbing a fast food restaurant (using a toy gun) and to one count of First-degree Robbery in Number 11-CR-00049 for robbing a tobacco store (using a knife). T1; 3, 99-100; T2; 1, 53-54.

Prior to sentencing, Petitioner attempted to withdraw his plea, asserting that it was not made knowingly, voluntarily, or intelligently. T3; 3.

A hearing on a motion to withdraw a guilty plea is a critical stage of proceedings, entitling a defendant to the appointment of counsel. Carrigan v. Commonwealth, 414 S.W.3d 16, 21, 23 (Ky. App. 2013). "That right to counsel is denied when counsel does not support his client's request to withdraw his plea." Id. at 22. Conflict counsel, appointed for the purposes of representing Mr. Purvis at the hearing on his motion to withdraw his plea, provided Petitioner Purvis ineffective assistance of counsel when she failed to investigate and prepare for the hearing and failed to act as a zealous advocate on behalf of Petitioner. As a result, the Laurel Circuit Court denied Petitioner's motion to withdraw

his plea.

Just prior to sentencing, Petitioner Purvis appeared before the Circuit Court on his motion to withdraw his guilty plea, where he was represented by conflict counsel. T3; 3; VR 1/20/2012;. At the hearing conflict counsel's performance fell below an objective standard of reasonableness and outside of prevailing professional norms. Conflict counsel didn't even know, until she arrived at court, that a hearing was to be held on the motion. VR 1/20/12; 1:29:40. Conflict counsel arrived moments before the hearing was to start and met Petitioner for the first time. T3, 39. Before entering the court room, conflict counsel told Petitioner that she "would feel bad blasting your old lawyer because we are both in the DPA, and we are like sisters." T3; 39. Petitioner tried to tell conflict counsel that he had witnesses that he would like to call at the hearing including his father who could testify that trial counsel used him to coerce Petitioner into taking a plea bargain, but conflict counsel interrupted him and said, "[t]he hearing is not going to be today. I just met you and I have not had time to prepare." Id.

Despite conflict counsel's assurances that the hearing would

not be held that day, the hearing did in fact take place that day. VR 1/20/12. Conflict counsel informed the court that she was unaware that a hearing would take place that day, that Petitioner Purvis would like to have time to discuss the case with her, but that she was prepared to go forward. Id. at 1:29:24. When the court sought clarification on whether conflict counsel was prepared, conflict counsel responded, "I can be prepared. Yes, Your Honor." Id. at 1:29:43. The court was willing to give conflict counsel more time to prepare, stating "I don't care to pass this a little further in the docket if that will help you." Id. at 1:29:45. Yet, conflict counsel still decided to go forward at that time. Id. at 1:29:48.

Conflict counsel [believed] claimed she could be prepared, but unfortunately for Mr. Purvis, the only thing that conflict counsel was prepared to do that day was to protect and represent her "sister" counsel. At best, conflict counsel failed to prepare for the hearing, and as a result was unable to develop testimony helpful to the Petitioner, Shane Purvis. At worst, conflict counsel set out to protect her friend rather than advocate for her client. Either way, the Petitioner received ineffective assistance during this critical part of his case.

The sole witness that conflict counsel called during the hearing was trial counsel. Id. at 1:30:03; 1:41:42. During her direct examination of trial counsel, conflict counsel repeatedly led trial counsel and failed to engage in any adversarial testing of the answers provided. First, conflict counsel asked trial counsel, "Were you prepared to go forward with trial?" VR 1/20/12; 1:31:50. To which, trial counsel responded, "Yes we were." Id. at 1:31:52. Conflict counsel then completely abandoned this line of questioning without probing further to find out what exactly trial counsel had done to prepare or in what way trial counsel had prepared for trial.

Conflict counsel then attempted to help trial counsel point out that trial counsel did NOT want Petitioner to go to trial for fear that he would get more time than he would through the plea offer. Conflict counsel asked: "OK, and in your opinion, I believe the plea offer was 13-years?" and "In your opinion, would Mr. Purvis have gotten more time at trial or less time at trial?" Id. at 1:31:58. The only possible reason for asking the latter question was to elicit from the trial counsel that she felt that if Petitioner went to trial he would receive a greater sentence than if he took the plea deal.

Conflict counsel also asked, "Is it fair to say that Mr. Purvis went back and forth several times whether or not he wanted to plea in this case?" Id. at 1:34:35. Conflict counsel's goal at this hearing was suppose to be to show that Mr. Purvis did not want to plead guilty and that actions taken or not taken by trial counsel rendered his plea unknowing, unintelligent, and involuntary. Had conflict counsel bothered to have an adequate conversation with Mr. Purvis prior to proceeding with the hearing, she would have learned that Petitioner Purvis **never wavered**, and up until the last moment when he realized that trial counsel **was not prepared for trial**, while experiencing **undue pressure** from the trial attorney, one of her colleagues, and his father, and **guided by misinformation provided by** trial counsel decided to plead guilty, as follows:

   Mr. Purvis also received ineffective assistance from his trial counsel when she failed to familiarize herself with relevant law and precedant pertaining to the case, and as a result, failed to advise him of the possibility of acquittal or receiving a lesser-included offense instruction had he chosen to proceed to trial. "In order to be valid, a guilty plea in a criminal case must represent a meaningful choice between the probable outcome at trial and the

more certain outcome offered by the plea agreement." Vaughn v. Common., 258 S.W.3d 435, 439 (Ky. App. 2008). A guilty plea must represent a voluntary and intelligent choice among the alternative courses of action open to the defendant. North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742 (1970). Petitioner's guilty plea did not represent a knowing and intelligent choice among the alternative courses of action open to him. Because trial counsel failed to advise the Petitioner that if he proceeded to trial he would be entitled to the lesser-included instruction of second-degree robbery, Petitioner was unable to accurately weigh his options.

Had Petitioner proceeded to trial, he would have been entitled in both cases to instructions on second-degree robbery as a lesser-included offense. "Kentucky courts are bound to instruct juries on the whole law of the case, ... including alternative instructions when supported by the evidence." Morrow v. Commonwealth, 286 S.W.3d 206, 213 (Ky. 2009). A defendant is entitled to a lesser-included offense instruction if, under "the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believed beyond a reasonable doubt that he is guilty of the lesser offense." Houston v. Commonwealth, 975 S.W.2d 925, 929 (Ky. 1998).

Given the totality of the circumstances in each of the Petitioner's cases, a reasonable doubt existed as to the guilt of first-degree robbery, and the jurrers could have found him guilty of second-degree robbery. KRS 515.020

In indictment No. 11-CR-00510, Petitioner was accused of robbing a fast food restaurant by driving through the drive thru window, pointing a gun at the attendant, and demanding money. TI;3. Petitioner alleges in his RCR 11.42 motion that the "alleged gun" was never recovered and that the attendant merely believed the assailant to have a gun. In Wilbur v. Commonwealth, 312 S.W.3d 321, 328 (KY. 2010), the Kentucky Supreme Court stated:

> [WE] construe KRS 500.080 (4)(b)'s definition of "deadly weapon" as a reference generally to the class of weapons which may discharge a shot that is readily capable of producing death or serious physical injury. A .38 caliber revolver, operable or not, falls into that class of weapons. A toy gun or water pistol does not.

Had the Petitioner proceeded to trial, trial counsel would have called into question whether a gun was actually used, or if

something that appeared to be a gun was used, whether that item was in fact a real gun or simply a toy. <u>This would have entitled Petitioner to an instruction on second-degree Robbery.</u>

Similarly, in indictment <u>11-cr-00049</u>, Petitioner was accused of robbing a tobacco store while in possession of a knife. If the knife was a simple pocket or hunting knife, Petitioner <u>could not be found guilty</u> of First-degree Robbery because these knives are expressly excluded as a dangerous weapon. At trial, counsel would have called into question the type of knife possessed by the assailant and whether that knife was actually used to threatened or harmed the attendant or merely possessed to assist the assailant in obtaining entry into the store. <u>This would have entitled Petitioner-Purvis to an instruction on second-degree Robbery.</u>

Trial Counsel never informed Petitioner that neither use of a toy gun nor the use of a pocket knife could sustain a conviction of First-degree Robbery. Further, trial Counsel failed to inform Petitioner that had he went to trial, <u>he would be entitled to an instruction on second-degree Robbery in both cases.</u> It is likely that, if convicted of

any crime, he would have convicted of second-degree robbery. Had Petitioner Shane Purvis been made AWARE that second-degree Robbery, which carries a maximum ten (10) year sentence, which is three (3) years less than his thirteen (13) year plea deal → and a crime outside of the violent offender statute, was a possibility, he would have proceeded to trial. Thus, trial counsel's failure to familiarize herself with <u>Wilbur v. Commonwealth</u> and the statutes defining first and second degree Robbery, as well as the statute defining a dangerous weapon, and further failing to advise Petitioner on this law substantially prejudiced the Petitioner, as it led to an unknowing, involuntary, and unintelligent guilty plea.

Conflict Counsel's questioning on this matter was nothing more than an attempt to show the court that the Petitioner had been contemplating taking a deal all along, rather than that he entered a plea as a result of "under Pressure" and "misinformation".

Conflict counsel continued to assist trial counsel by asking, "Is the process of mock cross examination a way to convince someone to take a plea who is reluctant to plea?" Id. at 1:34:55. This question provided trial counsel with an opportunity to tell the court that mock cross-examination is used to prepare a defendant for being on the

stand, to see how they will react, and that the exercise is particularly helpful when a defendant has anger issues about their case. Id. At 1:35:05. Conflict Counsel never asked a follow up to this question. Conflict Counsel never asked why mock cross examination was appropriate in Petitioner's case. The question appears to be an attempt to show that trial counsel had acted reasonably rather than "coercively" as Mr. Purvis alleged. Even if conflict counsel's question was not asked with the intention of assisting trial counsel, Conflict Counsel did not subject trial counsel to adversarial testing because she failed to prepare for the hearing. Had Conflict Counsel taken the court's offer of passing the hearing, and prepared by talking to Mr. Purvis and his witnesses, she would have discovered and would have been able to present testimony that Petitioner Purvis had never intended to testify and that the true purpose of the mock cross examination was to pressure the Petitioner into testifying.

    Conflict Counsel then entered into a line of questioning tailor-made to show that trial counsel had properly advised Mr. Purvis during his plea and to show that Mr. Purvis had plead knowingly, intelligently, and voluntarily. Conflict Counsel asked, "When Mr. Purvis came to court to enter the plea, did you go over the guilty

plea form with him?" Id. at 1:37:04; "And do you think that he knew the decision he was making?" Id. at 1:37:14; "And you didn't pressure him to sign [the plea agreement] or come to court the day before trial to sign [the plea agreement]" Id. at 1:37:38; and "Is it fair to say that he knew that you thought that things could go badly at trial and that you were concerned then?" Id. at 1:38:16. All of these questions were designed to help trial counsel paint a picture of a well-reasoned, informed, and voluntary plea, which is in direct opposition to Mr. Purvis' assertions and the basis for his motion to withdraw his plea.

Mr. Purvis was substantially prejudiced by conflict counsel's failure to prepare for the hearing and by her questioning apparently designed to assist her colleague. Had conflict counsel spoken to Mr. Purvis and his witnesses prior to the hearing and properly examined trial counsel, the court would have learned that trial counsel had placed undue pressure on Mr. Purvis to plead guilty which overbore his will, including using his father to convince him to plead guilty and subjecting him to mock cross-examination along with a colleague only a day before trial. (T3;56). Had conflict counsel acted within prevailing professional norms, the Circuit Court would have heard

that trial counsel had failed to advise Mr. Purvis of the relevant law in the matter, that trial counsel acted in a manner that overbore Mr. Purvis's will to proceed to trial, that trial counsel used Mr. Purvis' father to convince (coerce) him to take a plea, and that trial counsel was unprepared to go to trial. But for conflict counsel's deficient performance, it was more than probable that the Circuit Court would have allowed Mr. Purvis to withdraw his plea and proceed to trial.

In recognition of the "critically important" nature of the right to effective assistance of counsel at trial, Trevino v. Thaler, 133 S.Ct. 1911, 1921, 185 L.Ed.2d 1044 (2013), the Supreme Court has created a narrow exception to Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In Martinez v. Ryan, 132 S.Ct. 1309, 1320, 182 L.Ed.2d 272 (2012), the Court held that "cause" to excuse procedural default can be established in situations where state law bars a petitioner's IATC claims on direct appeals and the petitioner did not have the benefit of effective assistance of counsel at his initial review collateral proceedings. In Trevino, the Court expanded that exception to encompass those situations where a state's procedural system "in theory grants permission [to raise an IATC claim on direct appeal]

but, as a matter of procedural design and systematic operation, denies a meaningful opportunity to do so." 133 S.ct. at 1921.

Kentucky courts like those in Texas and Tennessee, "routinely recommend that defendant's raise their ineffective assistance claims in Post-Conviction Proceedings". The clearest articulation of this idea comes from Humphrey v. Commonwealth, 962 S.W.2d 870, 872; 45 3 KY L. Summary 17 (KY. 1998). [636]. The Martinez/Trevino exception applies in Kentucky and thus, Kentucky Prisoners can, under certain circumstances, establish "cause" for a procedural default of their IATC claims by showing that they lacked effective assistance of counsel at their initial-review collateral proceedings.

Furthermore, there is persuasive precedent for reaching the Trevino question even though a lower Federal Court has ruled on the underlying merits of the procedurally defaulted IATC claims. In Trevino itself, the district court had alternatively ruled that the IATC [**22] claims failed to demonstrate the necessary prejudice. See Trevino v. Thaler, 678 F. Supp. 2d 445, 471-72 (W.D. Tex. 2009) aff'd 449 aff'x 415 (5th Cir. 2011). This merits ruling did not deter the Supreme Court from using Trevino as a vehicle for promulgating an expansion of the procedural default exception created by Martinez.

see 133 S.ct. at 1921-22. And on remand from the Supreme Court, the 5th circuit did not reaffirm the district court based on the alternative merits ruling, but instead remanded the whole matter back to the district court for "Full Reconsideration [***13] of the Petitioner's ineffective assistance of counsel claim." Trevino v. Stephens, 740 F.3d 378 (5th Cir. 2014) (Per Curiam). Reversed in part and remanded for further proceedings consistent with this opinion.

Woolbright v. Crews, 791 F.3d 628 (6th Cir. 2015) has thus far been unable to obtain an actual-constitutional evidentiary hearing on his IATC claims in either State Post-Conviction Proceedings or Federal Habeas Proceedings. The absence of factual development (which nullifies a key advantage of bringing such IATC claims in Collateral Proceedings) hamstrings this Court's ability to determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." SEE Strickland, 466 U.S. at 694. We therefore remand [**23] this matter back to District Court for a "Full Reconsideration" of the IATC claims that were not previously presented to the Kentucky Courts in Collateral Proceedings and consideration of whether to conduct an evidentiary hearing. This reconsideration would first address whether Woolbright

can demonstrate 1) the absence or ineffective assistance of counsel, and 2) the "substantial nature of his underlying IATC claims. See Sutton, 745 F.3d at 795-96.

The facts of this case prove that what Petitioner's trial counsel did to be worse than no representation at all. United States v. Cronic, 466 U.S. 648, 104 S.ct. 2039 (1984). An attorney who is burdened by a conflict between his/hers client's interests and his own sympathies to the prosecutors position is considerably worse than an attorney with loyalty to other defendants, because the interests of the state and the defendant are necessarily in opposition. United States v. Swanson, 943 F.2d 1070, 1074-75 (9th cir. [**28] 1991).

The Petitioner [has not] procedurally defaulted his claims in any way, but these new rules set by the U.S. Supreme Court show how the high court will protect a Petitioner's right to effective counsel, and his right to an evidentiary hearing on these claims of ineffective assistance of trial counsel and post-conviction counsel as shown herein.

Wherefore, the Petitioner Shane Purvis prays

this Court will grant him a Writ of Habeas Corpus.

Respectfully Submitted,

_____
Shane Purvis # 247860

Sworn to before me by Shane Purvis this the 28 day of November 2016

_____#536532_____         _____6-22-19_____
Notary Public - Kentucky              My Commission Expires

### NOTICE

Please take Notice that the foregoing was mailed, U.S. First-class mail, postage prepaid, to: Clerk Jackie Brock, United States District Court, 310 South Main Street - Rm 215, London, Kentucky 40741-1907 this 1st day of December 2016.

_____
Shane Purvis # 247860
Northpoint Training Center
P.O. Box 479, Hwy 33
710 Walter Reed Road
Burgin, Kentucky 40310